ALLEN, Judge.
This is an appeal from a Peremptory Writ of Mandamus, dated January 27, 1957, entered upon the petition of Thomas W. Abbott against the City of Naples and Elsie Lehman, city clerk, whereby respondents were required to issue a license to relator as a general building contractor. Respondents appeal, the parties being referred to herein as they stood before the trial court.
The petition for the alternative writ alleged that relator was a qualified general building contractor, and that he had been improperly denied a city license. Attached to the petition were twenty-five letters of recommendation from business associates and former property owners with whom he had contracted in the past.
The respondents moved to quash the writ on the grounds relator failed to show he had complied with the applicable ordinance, had passed the required examination, or had been discriminated against. Respondents’ answer and return to the writ alleged, in effect, that relator had failed to comply with the requirements set out in the motion to quash the writ.
The lower court issued a peremptory writ of mandamus, which, omitting the formal parts, read as follows:
“This cause now being before me upon the Motion of the Relator for a Peremptory Writ of Mandamus and the Court having heard and considered the whole proceedings and having also heard the arguments of counsel for the respective parties:
“It is ordered and adjudged that the Respondents, City of Naples, Florida, a municipal corporation, and Elsie Lehman, as City Clerk of City of *79 Naples, Florida, do forthwith issue to the Relator, Thomas W. Abbott, a municipal license to carry on his business of a general building contractor in City of Naples, Florida, upon payment by the Relator of the established license fee therefor.”
The appellants-respondents state two questions:
“1. The Court erred in holding that there was not sufficient statutory authority on the part of the City of Naples, Florida, to require general building contractors to stand an examination before being granted licenses in the City of Naples, Florida.”
“2. The Court erred in granting the peremptory writ of Mandamus to relator and ruling that the ordinance requiring qualifying examinations was void or unreasonable.”
It does not appear from the peremptory writ hereinabove set forth, which of the two grounds above alleged, or whether both of said grounds, were the bases of the court’s said order. If the order of the Circuit Judge was correct on either of the grounds hereinabove set forth, then, of course, it would follow that his decision should be affirmed. Perkins v. City of Coral Gables, Fla.1952, 57 So.2d 663.
We are of the opinion that the ordinance requiring qualifying examinations was void and, therefore, that the lower court should be affirmed.
Both the relator and the respondent refer to the case of State ex rel. Reynolds v. City of St. Petersburg, 1930, 133 Fla. 766, 183 So. 304, 118 A.L.R. 667, the respondents for the purpose of showing that the Supreme Court had held that the regulation of building trades and contractors is within the general police powers of municipalities of Florida, and the relator for the purpose of showing that the ordinance requiring an examination of contractors in that case showed definite standards which do not appear in the Naples ordinance in the instant case. In the St. Petersburg case, supra, the Supreme Court of Florida held valid an ordinance of the City of St. Petersburg, enacted pursuant to Legislative authority. The ordinance defined, regulated and governed general contractors within the City and required such contractors to take an examination.
Ordinance No. 873-A enacted by the municipality of St. Petersburg and involved in the last mentioned suit, empowered the city by ordinance to create a Board of Examiners for the purpose of examining those desiring to qualify as general contractors. Section 6 of the said ordinance provided that the Board of Examiners should prepare and conduct separate examinations for each applicant, and that such applicant should be examined by oral, written and practical tests as to his fitness to be granted a general contractor’s certificate. The ordinance further provided that the applicant should be graded upon the basis of one-third written, one-third oral and one-third practical, with a passing grade of 75%.
The oral and written tests were to be made with reference to knowledge of the city building code, and the practical tests were to be evidenced by work done in the class for which application was made, photographs with affidavits of such construction, and/or affidavits of competency from persons for whom said work was done being permitted as the evidence so required. The examining Board was required to announce the result of the examination within five days from the conclusion of the examination.
The Court, in its opinion, said [133 Fla. 766, 183 So. 311]:
“We find nothing in the Ordinance 873-A which is calculated to work any hardship on a competent and qualified contractor. The rights and privileges of a competent and qualified contractor are amply safeguarded by the provisions of the ordinance and upon a like hypothesis as that upon which the en *80 actment of reasonable municipal building codes are held to be valid as an exercise of the police power in the interest of the general welfare of citizens and residents of the municipality, the provisions of Ordinance No. 873-A will be held valid as a means of facilitating the purposes contemplated by the provisions of the building code.”
In the case of Permenter v. Younan, 1947, 159 Fla. 226, 31 So.2d 387, 389, the Supreme Court said:
“The generally accepted rule is to the effect that an ordinance which vests in municipal authorities arbitrary discretion to grant or revoke a license to carry on an ordinarily lawful business, without prescribing definite rules and conditions for the guidance of the authorities in the execution of their discretionary power, is invalid. 38 Am. Jur., p. 26, Section 337; Annotations, 12 A.L.R. 1436, 54 A.L.R. 1104, and 92 A.L.R. 401.”
In the case of Pridgen v. Sweat, 1936, 125 Fla. 598, 170 So. 653, 654, the Supreme Court of Florida had before it a question involving the validity of Section 10 of Chapter 14708, Laws of Florida, 1931, which required prospective dentists to appear before a Board for examination. The Court, in its opinion, said:
“The language of section 10, against which counsel for petitioner leveled their heaviest artillery, is that contained in the second sentence of said section and particulaxdy the clause reading as follows: ‘and shall include such subjects as are taught in accredited dental schools, and any other subjects which in the discretion of the Board are necessary.’ * * * * * *
“But we cannot say that much for the last clause in the second sentence of section 10 which reads: ‘Any other subjects which in the discretion of the Board are necessary.’ The Legislature may expressly authorize designated officials within definite limitations to provide rules and regulations for the complete operation and enforcement of the law within its express general purpose, but it may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying the law. * * *
“Under this provision, the board would be authorized to add any other subjects to those taught in accredited dental schools which in its discretion it might think necessary, however unrelated such additional subjects might be to the science of dentistry or dental surgery, and it might change these added subjects with each examination. This would open the door to rank discrimination as between applicants without any means of redress. Thus, this provision is not only an undefined delegation of legislative power, but it would easily operate to deny the equal protection of the laws. * * * ”
The ordinance under attack in this case (Naples Ordinance No. 284) provides:
“Section 10 (A-12) >j« % * ifc £
“(d) Any person desiring to take an examination for the purpose of being licensed or qualified as a Contractor, Electrician or Plumber, as above defined, in the City of Naples, shall make application therefor to the proper Board by filling in the printed form which may be obtained from the City Manager and paying an examination fee of $10.00. The Board of Examiners to which the application is referred shall then proceed to examine the qualifications and experience of the applicant in the classification of contracting or field of work selected by him. The examination may be in writing or may be verbal and/or practical in the discretion of the Board of Examiners. The examinations shall be such as to properly show the Board of Examiners that the applicant is either qualified or *81 not qualified to engage in the business of contracting or to perform work in the classification selected. If the result of the written or verbal or practical examination is satisfactory, the Board shall issue a certificate of competency certifying that such applicant is qualified to engage in the business of contracting or to perform work in the particular field or classification covered by the examination taken. Any person failing to pass the examination may be re-examined at the next regular or special meeting of the Board.”
A cursory examination of the above section discloses that the Board of Examiners could test one applicant before them by written examination, another one by an oral examination and a third one by some form of practical examination. Such a provision gives unrestrained authority to the Board since it is given the power to grant licenses arbitrarily by requiring different types of examinations for different applicants.
In the case of Godshalk v. City of Winter Park, Fla. 1957, 95 So.2d 9, 10, the Supreme Court held that an ordinance was invalid where it left the power to grant or deny a license in the uncontrolled discretion of a Board. A tile contractor sought an occupational license as provided for by Ordinance No. 548 of the City of Winter Park. The applicable ordinance provided:
“ ‘The Board shall examine applicants as to their practical knowledge of the installation of tile as defined in this ordinance. Examinations shall be made in whole, or in part, in writing, and shall be a (sic) practical and elementary character, but sufficiently strict to test the qualifications of the applicant to carry on the trade of a tile contractor and to satisfy as to the applicant’s ability as such and his familiarity with rules and ordinances governing the installation of tile. A grade of 75 per cent shall be considered a passing grade. If satisfied as to the competency of such applicants, the Board shall issue to him a certificate of competency authorizing him to engage in or work at the trade or business of a tile contractor as herein defined.’ ”
The Court referred to the St. Petersburg case above, among others, saying:
“It should be noted that the oral and written tests were to be made only with reference to the applicant’s knowledge of the building code of the City of St. Peters-burg, a definite and ascertainable set of rules.
“In Levine v. Hamilton, supra [Fla., 66 So.2d 266], we upheld a grant of power to the State Board of Pharmacy, in effect permitting the Board to examine applicants for registration as pharmacists for the purpose of ascertaining whether or not the applicant is qualified to conduct the business of compounding or dispensing drugs. We upheld the statute on authority of Pridgen v. Sweat, 125 Fla. 598, 170 So. 653, in which case we had held valid a portion of the statute authorizing the examination of prospective dentists by the Dental Board.
“In all of the above cases the subjects prescribed for examination were academic in nature and readily ascertainable by the skilled members of the administrative board, except for the City of St. Peters-burg case, where two-thirds of the examination concerned the building code. Considering the subjects to be covered by examination in those cases, the standards were far more definite than those with which we are concerned in the case at bar. We cannot conceive that any academic subject which might be susceptible of written examination would form a part of a tile contractor’s necessary educational equipment, nor is it stated in the ordinance what percentage of the examination will be used to test the familiarity of the applicant with ‘rules and ordinances covering the installation of tile’ or what rules or ordinances are involved.
* * * * * *
*82 “We are of the opinion that while the ordinance in question might, upon superficial examination, appear to establish some means for the use of an administrative body in determining the competency of an applicant, when these purported standards are considered with the thing to be tested, it becómes evident that in truth and in fact the ordinance establishes no standards at all and leaves the granting or denial of a license wholly within the uncontrolled discretion of the Board. Accordingly, we hold that Ordinance No. 548 of the City of Winter Park contains an unconstitutional and, therefore, fatal delegation of legislative power. * * * ”
We think that the lower court should be affirmed on the authority of the above decisions.
Judgment affirmed.
KANNER, C. J., and SMITH, CUL-VER, A. J., concur.